

## Office of the Attorney General
### State of Texas

**DAN MORALES**
ATTORNEY GENERAL

March 10, 1995

Honorable David H. Cain
Texas State Senate
P.O. Box 12068
Austin, Texas 78711

Opinion No. DM-331

Re: Whether a city's expenditures of community development block grant funds are subject to state competitive bidding laws (RQ-644)

Dear Senator Cain:

In your capacity as chairman of the House Committee on Transportation you asked whether the state's competitive bidding laws apply to community development block grant ("CDBG") funds "received and distributed" by a city to (a) "nonprofit contractors" and (b) "for-profit entities." You say that federal law, at least, "does not require that CDBG funded projects be competitively bid if cities award a grant to a nonprofit corporation." Also, you note that, while the municipal competitive bidding provisions in section 252.021 of the Local Government Code apply to "[a] contract . . . [that requires an expenditure] . . . from one or more *municipal funds,*" section 373.005(c) of the Local Government Code makes a distinction, in the context of municipal community development projects, between "federal money" and "municipal funds." In our opinion, a city's expenditures of CDBG funds are subject to competitive bidding under state law when spent on "contracts" exceeding the threshold amounts set out in those laws and not falling within any of the exceptions to the bidding requirements set out there or elsewhere in state law.

Chapter 373 of the Local Government Code generally authorizes a municipality to finance community development projects using federal funds received by the municipality as well as other funds of the municipality. Section 373.005(c), referenced in your request, reads in pertinent part:

> A municipality may implement programs to provide financing for the acquisition, construction, improvement, or rehabilitation of privately owned buildings and other improvements or to assist private, for-profit entities if the assistance is necessary or appropriate to carry out an economic development project, through the use of loans and grants from *federal money* remitted to the municipality. . . . A municipality may not provide municipal property or *municipal funds* for private purposes. The programs and financing must be in keeping with an approved community development plan that the municipality has determined to be a public purpose. A

> program established for financing the acquisition, construction, improvement, or rehabilitation of buildings and improvements, or for financing economic development projects, through the use of *federal funds* may prescribe procedures under which the owners of the buildings, improvements, or economic development projects agree to partially or fully reimburse the municipality. [Emphasis added.]

The federal law providing for the granting of CDBG funds is found in 42 U.S.C. chapter 69. *See also* 24 C.F.R. pt. 570. We are aware of nothing in current federal law, however, that specifically addresses the applicability of state competitive bidding requirements to the use of CDBG funds by recipient municipalities.

Several prior opinions of this office concluded that federal "revenue sharing" funds received by local governments under chapter 67 of title 31 of the United States Code, the Revenue Sharing Act, now repealed, were subject to state laws generally applicable to those entities' public funds.[1] *See* Attorney General Opinions JM-716 (1987); MW-329 (1981); H-1189 (1978); H-1010; (1977), and H-127 (1973). In support of their conclusions, those opinions, *inter alia*, cited federal provisions specifically making recipient entities' expenditures of any federal revenue sharing funds received subject to the same laws and procedures applicable to other funds of those entities. *See* 31 U.S.C § 6704(a) (repealed 1986). In contrast, the federal law pertaining to CDBGs provides merely that grantees must "comply with the other provisions of [42 U.S.C. ch. 69] *and with other applicable laws.*" 42 U.S.C. § 5304(b)(6) (emphasis added).

In our opinion, however, federal funds discretionarily obtained and expended by Texas municipalities take on the character of municipal funds and are generally subject to the state laws pertaining to such funds absent specific exceptions made under state law. We believe this to be the case even in the absence of specific federal provisions acknowledging the applicability of state law, such as those in the now-repealed Revenue Sharing Act, and indeed even if the pertinent federal law specifically imposed requirements contrary to state law.[2]

Further, as to the applicable state law here, while we think it unnecessary in this context to determine precisely what, if any, distinction the legislature intended to make in section 373.005(c) of the Local Government Code *vis-à-vis* the uses to which federal

---

[1]The Revenue Sharing Act was repealed in 1986. Pub. Law No. 99-272, Tit. XIV, § 14001(a)(1), Apr. 7, 1986, 100 Stat. 327.

[2]If federal law conditioned a city's receipt and use of such funds on compliance with provisions contrary to state law, the city would simply be unable to accept the funds. We do not believe that there is a colorable argument in this context that federal law would "pre-empt" state law when in conflict. Such pre-emption would obtain only were a city *required* by federal law to accept and use the funds.

funds and funds from other sources could be put by a city on community development projects, we do not believe that the use of the distinct terms "federal money" and "municipal funds" in section 373.005(c) was itself intended to exempt expenditures of federal funds in the hands of a municipality from the operation of state law generally applicable to municipal funds.

CDBG receipts would presumably be subject to the municipal budget process—section 102.003 of the Local Government Code requires funds received and available "from all sources" to be included in the budget. Likewise, we could not imagine that CDBG receipts would not have to be deposited in the municipal depository under chapter 105 of the Local Government Code, even though those provisions consistently speak only to the deposit of "municipal funds." *See id.* §§ 105.014 - .015, .031. Had the legislature intended to exempt the expenditure of CDBG grant money from the state competitive bidding laws, we think it would have specifically done so. *See, e.g.*, Local Gov't Code §§ 212.071 (excepting certain municipal public improvement contracts from bidding requirements), 374.904 (exempting certain municipal sales connected with urban renewal projects from state law bidding requirements), 392.0565 (added in response to Attorney General Opinion JM-573 (1986) specifically exempting municipal housing authorities from state law to extent necessary to participate in Consolidated Supply Program of Department of Housing and Urban Development); Attorney General Opinion JM-573 (1986) (municipal housing authority may not participate in Consolidated Supply Program of Department of Housing and Urban Development without also complying with state competitive bidding laws).

Moreover, we think it clear that the fact, in itself, that an expenditure of CDBG funds is made to a nonprofit as opposed to a for-profit entity does not take the expenditure out of the competitive bidding requirements. The municipal competitive bidding requirements in chapter 252 make no general distinction between nonprofit and for-profit contractees. Section 252.022(7)(F) does make a specific bidding requirement exception for "management services provided by . . . nonprofit corporations" to certain museums, parks, zoos, or "other facilit[ies]." This specific exception suggests that contracts over the threshold amounts with nonprofit entities are generally subject to the bidding requirements, absent specific exceptions. *See also* Attorney General Opinion JM-385 (finding that a county contract with a nonprofit entity was exempted from the competitive bidding requirements only because a state statute specifically applicable to contracts of the non-profit entities at issue there expressly excepted them from the requirements).

Of course, whether a particular expenditure of CDBG funds constitutes one under a "contract"[3] in a sufficient amount as to bring it within the competitive bidding provisions

---

[3]We note that your request speaks in part of cities' expenditure of CDBG funds in the form of "grants." The provisions of chapter 373 specifically authorize cities to make "grants" to certain entities, including certain kinds of nonprofit organizations. We do not speculate here as to whether particular

Of course, whether a particular expenditure of CDBG funds constitutes one under a "contract"[3] in a sufficient amount as to bring it within the competitive bidding provisions of chapter 252, or whether a particular contract would fall within the exceptions to the bidding requirements in that chapter or elsewhere in state law would depend on the facts of the particular case. *See, e.g.,* Local Gov't Code § 252.022(a)(4) ("personal or professional services" exception to bidding requirements), (a)(11) (exception for certain public improvement contracts under chapter 212).

## S U M M A R Y

Expenditures by a city of Federal Community Development Block Grant Funds on "contracts" exceeding the threshold amounts set out in the state's municipal competitive bidding laws and not falling within any of the exceptions to the bidding requirements set out there or elsewhere in state law are subject to competitive bidding.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by William Walker
Assistant Attorney General

---

[3]We note that your request speaks in part of cities' expenditure of CDBG funds in the form of "grants." The provisions of chapter 373 specifically authorize cities to make "grants" to certain entities, including certain kinds of nonprofit organizations. We do not speculate here as to whether particular grants must inevitably be "contracts" within the ambit of the bidding provisions of chapter 252. *See, e.g.,* Attorney General Opinion C-246 (1964) (county may arrange without a written contract for the care of indigents). *But see* Attorney General Opinion JM-274 (1985) (state constitution requires public entity's grants or lending of credit to be accompanied by sufficient controls to ensure that a public purpose of the entity is served).